**AUBURN MEDICAL CENTER, INC., Plaintiff,**

v.

**Terry ANDRUS, et al., Defendants.**

**No.  Civ.A. 97–D–192–E.**

United States District Court, M.D. Alabama, Eastern Division.

June 12, 1998.

---

K. Anderson Nelms, Montgomery, AL, Hugh V. Smith, Jr., Montgomery, AL, David J. Llewellyn, Conyers, GA, for Plaintiff.

Ivan Wood, Houston, TX, James E. Williams, James F. Mozingo, Montgomery, AL, Scott G. Camp, Houston, TX, Ronald G. Davenport, Montgomery, Al, David R. Boyd, Montgomery, AL, for Defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court are Motions to Dismiss filed by the various Defendants: (1) McCauley Associates and R. Mack Freeman, filed March 18, 1997; (2) James E. Sanders, filed April 7, 1997; (3) John V. Denton, filed April 7, 1997; (4) Terry Andrus, Carey Owen and Kenneth Robinson, filed April 7, 1997; and (5) E.L. Spencer, Thomas M. Botsford, Rhett E. Riley, James W. Mathews, Paul H. Waddy, William D. Lazenby, James P. Himmelwright, R. Kenneth McKemie, Lucinda S. Cannon, Nelson Hillyer, and Jo Lovell ("the Board Member Defendants"), filed April 7, 1997. On April 21, 1997, Plaintiff filed a Response to the Motion to Dismiss by Defendants McCauley & Associates and R. Mack Freeman Jr., to which those Defendants replied on June 30, 1997. On May 21, 1997, Plaintiff filed a Response to the Motion to Dismiss by Terry Andrus, Carey Owen, Kenneth Robinson, the Members of the Board of Directors, and James E. Sanders ("Pl.'s Resp. to Defs.' Mot. to Dis."). On June 20,

1997, Defendants Terry Andrus, Carey Owen, Kenneth Robinson, John Denson, and the Board Member Defendants filed a Brief in Support of their Motions to Dismiss.

After careful consideration of the arguments of counsel, the relevant law and the record as a whole, the court finds that Defendants' Motions are due to be granted.

## BACKGROUND

The Parties before the court have a history steeped in litigation; the instant action is but the latest battle in this long-running conflict. Plaintiff Auburn Medical Center is an Alabama corporation holding a Certificate of Need ("CON") issued by the State Health Planning and Development Agency ("SHPDA"), pursuant to the laws of the State of Alabama and SHPDA regulations, to construct, equip and operate a sixty-four (64) bed general acute care facility in Auburn, Lee County, Alabama.

East Alabama Health Care Authority, d/b/a East Alabama Medical Center ("EAMC") operates a hospital facility in Opelika, Lee County, Alabama. Defendant Terry Andrus is the administrator of EAMC and both Carey Owens and Kenneth Robinson are EAMC employees. Defendant James E. Sanders is the Director of Certificate of Need Operations of Review of SHPDA. Defendant John V. Denson is and was at all times relevant to this action the General Counsel of EAMC. The Board Member Defendants all served as members of the Board of Directors of EAMC. Defendant R. Mack Freeman, Jr. at all times relevant to this action was employed as an architect for EAMC. Defendant McCauly Associates, Inc. at all times relevant to this action was contracted to provide services for EAMC.

On February 18, 1997, Plaintiff Auburn Medical Center filed a Complaint against the several Defendants, alleging a conspiracy of activities among them, the objective of which was to prevent the construction of Plaintiff's hospital, Auburn Medical Center, pursuant to its State issued Certificate of Need ("CON"), by interfering with its ability to obtain financing, doctor support, and market share. Plaintiff contends that Defendants, through the above described conspiracy, engaged in a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq. Plaintiff seeks damages and injunctive relief under RICO for Defendants' alleged conspiracy to commit multiple criminal acts of mail fraud in violation of 18 U.S.C. § 1341. Further, Plaintiff alleges a § 1983 claim for deprivation of Due Process in violation of the Fifth and Fourteenth Amendments to the United States Constitution, as well as a claim under the All Writs Act, 28 U.S.C. § 1651.

## MOTION TO DISMISS STANDARD

When ruling on a motion to dismiss for failure to state a claim, the court must assume that the factual allegations in the complaint are true. *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); Fed.R.Civ.P. 12(b)(6). Assuming that the facts are true, a complaint may be dismissed under Federal Rule of Civil Procedure 12(b)(6) only "if it is clear that no relief could be granted" under any set of facts that could be proved consistent with the allegations.[1] *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). On a motion to dismiss for failure to state a claim upon which relief may be granted, the movant "sustains a very high burden." *Jackam v. Hospital Corp. of America Mideast, Ltd.,* 800 F.2d 1577, 1579 (11th Cir.1986) (citing *Currie v. Cayman Resources Corp.,* 595 F.Supp. 1364, 1376 (N.D.Ga.1984)). The Court of Appeals for the Eleventh Circuit has held that "motions to dismiss for failure to state a claim should be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims." *Jackam,* 800 F.2d at 1579 (quoting *Bracewell v. Nicholson Air Servs., Inc.,* 680 F.2d 103, 104 (11th Cir.1982)).

## DISCUSSION

### I. RICO Claims

▮ Section 1962(c) of RICO prohibits conducting or participating in the conduct of an enterprise "through a pattern of racke-

---

1. Rule 12(b)(6) of the *Federal Rules of Civil Procedure* permits a party to plead or move for dismissal of a complaint if that complaint fails to state a claim upon which relief may be granted.

teering activity." *Sedima v. Imrex Co.*, 473 U.S. 479, 482, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).[2] Section 1964(c) of Title 18 of the United States Code provides a private right of action for "any person who is injured in his business or property by reason of a violation of [18 U.S.C.] section 1962." 18 U.S.C. § 1964(c). To recover under civil RICO, section 1964(c) requires a private plaintiff to plead an additional element: the plaintiff must show that he, she, or it suffers, or has suffered, an injury as a result of the racketeering activity. *Pelletier v. Zweifel*, 921 F.2d 1465, 1499 (11th Cir.1991).

■ To state a claim under RICO a plaintiff must allege each of the following: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima*, 473 U.S. at 482, 105 S.Ct. 3275. To establish a pattern of racketeering activity there must be at least two predicate acts of racketeering activity, one of which occurred after the effective date of the statute, and the last of which occurred within ten years after the commission of a prior act of racketeering activity. 18 U.S.C. § 1961(5). These racketeering predicates must be related and amount to, or threaten the likelihood of, continued criminal activity. *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 237–38, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). "Racketeering activity" is defined as any act indictable under certain provisions of the United States Code. 18 U.S.C. § 1961(1).

### A. *Plaintiff Fails to Establish Requisite Predicate Acts.*

■ Plaintiff alleges that Defendants conspired to commit mail fraud in violation of 18 U.S.C. § 1341, which is a specified predicate act that will sustain a RICO claim. 18 U.S.C. § 1961(1)(B). The essential elements of a mail fraud claim are: (1) a scheme to defraud; (2) that the defendant "caused" a use of the mails; and (3) that the mailing was for the purpose of executing the scheme. *United States v. Hewes*, 729 F.2d 1302 (11th Cir.1984). Plaintiff alleges that Defendants

engaged in numerous instances of mail fraud, which may be grouped into two categories. For the reasons outlined below, the court finds that Plaintiff fails to establish that Defendants have engaged in the requisite predicate acts of mail fraud for purposes of sustaining its RICO claim.

### 1. *Fraudulent Application and Amended Application for CON*

The first and last instances of mail fraud alleged by Plaintiff involve EAMC's application and amended application for a CON. Plaintiffs allege that the first application occurred in response to Plaintiff's October 1983 filing with SHPDA of an application for a CON approving and allowing for the construction of a 64–bed hospital and facility in Auburn, Lee County, Alabama. (Compl.¶ 39.) Plaintiff contends that at that point, Defendants entered into a conspiracy to prevent the issuance of Plaintiff's CON by submitting a competing CON application on behalf of EAMC for the construction and operation of a 54–bed addition to its existing facility in neighboring Opelika, Lee County, Alabama. (Compl.¶ 39.) Plaintiff contends that such actions constitute a violation of the Mail Fraud statute because:

> said competing CON application [was] filed on behalf of EAMC based on the fraudulent pretense that EAMC actually desired to obtain said CON and build said 54 bed addition to serve the need for additional hospital beds.... In fact, EAMC did not intend to serve the need for additional beds in the Lee County area, but rather intended to stop its competitors, Auburn, from serving the need for additional hospital beds in the Lee County area. Said fraudulent application was filed through the United States Mail in violation of the Mail Fraud Statute of 18 U.S.C. § 1342, as it was an attempt to deprive Auburn of its property right through false and fraudu-

---

**2.** In relevant part, 18 U.S.C. § 1962 provides:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the con-

duct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

lent pretenses through the use of the United States Mail.

(Compl.¶ 40.)

Plaintiff contends that Defendants further violated the Mail Fraud statute on or about March 8, 1995, by filing an amended application on behalf of EAMC for a CON for an Ambulatory Surgery Center to be located at Auburn. Plaintiff contends that the amended application contained false information and false representations, that Defendants knew that said application contained false information, and that said application was filed via the United States Mail. (Compl.¶ 75–78.) Plaintiff contends that the amended application was filed with SHPDA for purposes of "attempting to conceal the illegal construction engaged in by EAMC from Auburn and SHPDA, continuing to usurp Auburn's market share by actually entering into the Auburn market, and, at a minium, causing Auburn to be requires to expend its resources to contest EAMC's requested CON." (Compl.¶ 78.)

Defendants argue that these actions do not constitute mail fraud, as Defendants were merely exercising their rights under Alabama statutory law and administrative regulations to file a CON application on behalf of EAMC. (Br. in Supp. of Board Members' Mot. to Dis. at 8 (citing Ala.Code § 22–21–260, et seq.)) Defendants further contend that Plaintiff's allegations with respect to the CON applications, while characterized as claims of mail fraud, instead constitute allegations of obstruction of state administrative proceedings. (Mem. Br. in Supp. of Mot. to Dis. Defs. Andrus, Owen and Robinson at 12.) As such, Defendants contend that Plaintiff's allegations are insufficient predicate acts to establish a pattern of racketeering activity. (Id). (citing *O'Malley v. New York City Transit Auth.*, 896 F.2d 704 (2d Cir. 1990); and *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481 (6th Cir.1989).)

For the reasons discussed below, the court need not address the question of whether Plaintiff's allegations concerning Defendants' actions with respect to EAMC's application and amended application for CON's constitute predicate acts for a RICO claim.

## 2. *Fraudulent Litigation Activities*

The remainder of the predicate acts alleged by Plaintiff concern Defendants' involvement in various litigation activities which Plaintiff contends constitute mail fraud. (Compl.¶ 44–57.) Plaintiff states that Defendants engaged in the continuous filing of pleadings which Defendants "had no right to file," and which "contained false, meritless, baseless and deficient legal arguments." (Br. at 9–10.) The basis of these contentions lies in a lawsuit Plaintiff filed in this court on or about April 9, 1987, to recover what it alleged were its lost property rights, namely its CON, which had been denied by a CON Review Board in May 17, 1984. On July 12, 1988, an advisory jury found that Plaintiff's Constitutional rights protected by the 5th and 14th Amendments to the United States Constitution were violated by SHPDA, and on August 24, 1988, the court ordered SHPDA to re-issue Auburn its CON and be allowed to build its hospital. (Compl.¶ 43.)

The first of Defendants' alleged litigation-related mail fraud activities occurred subsequent to the court's August 1988 determination, when various Defendants filed a post-judgment motion to intervene and other post judgment motions. Plaintiff contends that "[s]aid motions were filed despite the fact that EAMC had no standing upon which to do so, and some or all of the EAMC Associated Defendants were aware of EAMC's lack of standing, yet EAMC purported to have such standing by virtue of filing the motions." (Compl.¶ 44.) Plaintiff contends that Defendants filed said motions through the United States Mail for the specific purpose of causing Plaintiff pecuniary loss and delay, as Defendant sought to "keep[ ] the validity of Auburn's CON in question, as they were aware that as long as they were able to call into question the validity of Auburn's CON, Auburn could not construct its hospital or obtain financing for the construction of its hospital." (Compl.¶ 45.)

Plaintiff alleges that Defendant further engaged in a conspiracy to violate the Mail Fraud statute when it appealed the court's denial of the previously described motions to the United States Court of Appeals for the Eleventh Circuit. (Compl.¶ 47.) Plaintiff

again contends that the filing of the appeal was fraudulent and brought under false pretenses, as EAMC had no standing to bring the appeal, yet did so anyway in order to call into question the validity of Auburn's CON. (Compl.¶ 47.)

Plaintiff contends that Defendants further violated the Mail Fraud statute on January 12, 1989, by filing an action "under false pretenses" in the Circuit Court of Montgomery County, Alabama, challenging the validity of Auburn's CON. (Compl.¶ 49.) Plaintiff contends that said action was done under false pretenses, as the Circuit Court "clearly lacked subject matter jurisdiction," as Defendants knew that the time period for filing such an action had long since passed, yet did so nonetheless in order to cause pecuniary loss and delay to Plaintiff. (Compl.¶ 49–50.)

Plaintiff contends that another violation of the Mail fraud statute occurred when Defendants persisted in this case by appealing the Alabama Court of Civil Appeals' ruling in favor of Plaintiff to the Supreme Court of Alabama. (Compl.¶ 51.)

After the Alabama Supreme Court denied Defendant's writ of certiorari, Defendant applied for rehearing. Plaintiff contends that this action, too, was in violation of the Mail Fraud statute, as Defendants were aware that such application was not permitted, yet did so nonetheless, as well as raised new Federal Constitutional arguments which were not permitted by law. (Compl.¶ 52.) Plaintiff contends that Defendants engaged in this litigation activity, even though they knew that they were not permitted by law to do so, in order to continue the litigation and call into question the validity of Auburn's CON, thereby preventing Auburn from constructing its hospital and preventing Plaintiff from obtaining new financing. (Compl.¶ 54.)

Finally, Plaintiff contends that Defendants violated the Mail Fraud statute by filing for Writ of Certiorari to the United States Supreme Court when EAMC's application for rehearing was stricken by the Alabama Supreme Court. (Compl.¶ 55.) Plaintiff contends that this Writ of Certiorari was filed under false pretenses in that EAMC argued that the previously raised Constitutional arguments had been properly and timely raised in the proceedings below when the Defendants were aware that same was not true. (Compl.¶ 56.)

Defendants argue, and the court finds, that Plaintiff's allegations fail to show that Defendants engaged in a pattern of racketeering activity, as the acts alleged by Plaintiffs are not viable predicate acts for RICO purposes. Thus, Plaintiff fails to allege sufficient predicate acts to sustain its RICO claim. In particular, the court finds that engaging in the type of litigation activities described in this action does not constitute mail fraud for purposes of supporting a RICO claim. Rather, the court finds that plaintiff's mail fraud claims are, in fact, artfully pleaded claims for malicious prosecution. As such, they can not form the basis of a RICO claim.

a. Mail fraud claims are claims for malicious prosecution.

Under Alabama law, Plaintiff states a claim for malicious prosecution by alleging: (1) that a prior judicial proceeding was instituted by the present defendant; (2) that in that prior proceeding the present defendant acted without probable cause and with malice; (3) that the prior proceeding ended in favor of the present plaintiff; and (4) that the present plaintiff was damaged as a result of the prior proceeding. *Fina Oil & Chemical Co. v. Hood*, 621 So.2d 253, 256 (Ala.1993); *Delchamps, Inc. v. Larry*, 613 So.2d 1235 (Ala.1992). Under Alabama law, claims for malicious prosecution are disfavored. *Fina Oil & Chemical Co.*, 621 So.2d at 256; *Eidson v. Olin Corp.*, 527 So.2d 1283, 1284 (Ala. 1988); *Evans v. Ala. Professional Health Consultants, Inc.*, 474 So.2d 86, 88 (Ala.1985).

The court finds that, despite Plaintiff's attempts to couch its claims concerning Defendants' litigation activities in terms of fraud, Plaintiff, in essence, is stating a claim for malicious prosecution. In particular, Plaintiff bases its Complaint on Defendants' attempts to intervene and file post-judgment motions subsequent to a ruling by this court on Plaintiff's CON (Compl.¶¶ 44–45), appeal unfavorable rulings received on those rulings (Compl.¶ 47), and then file new litigation and subsequent appeals in the Circuit Court of Montgomery County up through the United States Supreme Court (Compl.¶¶ 49–52, 55).

Thus, Plaintiff alleges that the present Defendants instituted prior judicial proceedings. *See Fina Oil & Chemical Co.*, 621 So.2d at 256.

Plaintiff further alleges that, in these prior proceedings, Defendants acted without probable cause and with malice. Specifically, Plaintiff alleges that Defendants filed the post-judgment Motions and subsequent appeals despite the fact that they allegedly knew they had no standing to do so, yet did so nonetheless to cause Plaintiff's pecuniary loss and delay in construction. (Compl.¶ 45.) Plaintiff contends that Defendants knew the Montgomery County Circuit action and subsequent appeals would fail for lack of subject matter jurisdiction, yet persisted nonetheless in order to cause Plaintiff further pecuniary loss and delay in construction. (Compl.¶ 49–50.) Likewise, Plaintiff alleges that Defendants filed applications for writ of certiorari, despite the fact that they knew that such application was not permitted under the law, in order to cause Plaintiff further pecuniary loss and delay. (Compl.¶ 52.) Hence, Plaintiff have alleged the second element of a prima facie claim for malicious prosecution. *See Fina Oil and Chemical Co.*, 621 So.2d at 256.

The remaining two elements of a claim for malicious prosecution are met here, as well. Namely, Plaintiff has shown that the underlying allegedly fraudulent litigation ended in favor of Plaintiff. Plaintiff prevailed on the appeal of this court's prior ruling, and prevailed on the appeal of the Montgomery County Circuit Court ruling, as well. Finally, Plaintiff alleges that it has been damaged as a result of Defendants litigation activities. Specifically, Plaintiff states that, through the above described litigation activity, Defendants successfully delayed the construction of Auburn Hospital from May 17, 1984 through August 24, 1992, and consequently greatly increased the cost of construction for Auburn. (Compl.¶¶ 59, 60.)

Accordingly, the court finds that Plaintiff's allegations of mail fraud are, in fact, merely artfully pled claims of malicious prosecution.

### b. Malicious prosecution Claims do not give rise to RICO predicates.

Several district courts have specifically found that claims for malicious prosecution do not constitute predicate acts for purposes of sustaining a RICO action. *See, e.g., Ippolito v. State of Florida*, 824 F.Supp. 1562, 1575 (M.D.Fla.1993); *Capasso v. CIGNA Insur. Co.*, 765 F.Supp. 839, 843 n. 2 (S.D.N.Y. 1991); *Manax v. McNamara*, 660 F.Supp. 657, 660–61 (W.D.Tex.1987); *von Bulow by Auersperg v. von Bulow*, 657 F.Supp. 1134, 1144–45 (S.D.N.Y.1987).[3] Numerous other courts have found that the actions underlying claims for malicious prosecution, or analogous actions in the litigation context, will not support a RICO action. *See McDonald v. Schencker*, 18 F.3d 491, 493 (7th Cir.1994) (attorney's filing of a sur-reply brief for purposes of garnering additional fees does not constitute mail fraud for purposes of stating a RICO claim); *I.S. Joseph Co., Inc. v. Lauritzen*, 751 F.2d 265 (8th Cir.1984) (threats to sue do not give rise to an extortion claim for purposes of sustaining a RICO action); *Harris Custom Builders, Inc. v. Hoffmeyer*, No. 90–741, 1994 WL 329962, at * 4 (N.D.Ill. July 7, 1994) (filing lawsuits to enforce an allegedly illegally obtained copyright does not constitute extortion for purposes of sustaining a RICO action); *Morin v. Trupin*, 711 F.Supp. 97, 105 (S.D.N.Y.1989) (legitimate acts of attorneys on behalf of their clients can not form the basis of a RICO claim); *Forty–Eight Insulations, Inc. v. Black*, 63 B.R. 415 (N.D.Ill.1986) (expressing concern that allowing misstatements in bankruptcy petition to give rise to mail fraud for RICO purposes would result in infringement of party's First Amendment right to petition the government through the courts); *Paul S. Mullin & Assoc., Inc. v. Bassett*, 632 F.Supp. 532, 540 (D.Del.1986) (lawyer's act of posting letter on behalf of client does not amount to mail fraud for purposes of RICO action); *Park South Assoc. v. Fischbein*, 626 F.Supp. 1108, 1114 (S.D.N.Y.) (acts performed by lawyers on behalf of clients may make out case of abuse of process, but such claims cannot be considered extortion for purposes of establishing a

---

**3.** Malicious prosecution is, of course, a time honored common-law civil cause of action to redress the very acts of which Plaintiff complains in the instant case. It is not an act indictable under the United States Code.

predicate act for RICO), *aff'd,* 800 F.2d 1128 (2d Cir.1986); *Spiegel v. Continental Illinois Nat'l Bank,* 609 F.Supp. 1083, 1089 (N.D.Ill. 1985) (communication between attorneys on behalf of clients cannot serve as predicate acts for RICO because it would "chill an attorney's efforts and duty to represent his or her client in the course of the pending litigation"), *aff'd,* 790 F.2d 638 (7th Cir.1986); *American Nursing Care of Toledo, Inc. v. Leisure,* 609 F.Supp. 419, 430 (N.D.Ohio 1984) (threat of litigation is not a criminal act and does not constitute a predicate act for RICO purposes).

In reaching the conclusion that Plaintiff's malicious prosecution claims, couched in terms of mail fraud claims, cannot give rise to a RICO action, the court finds persuasive the district courts' well-reasoned opinions in *Nakahara v. Bal,* No. 97–2027, 1998 WL 35123 (S.D.N.Y. January 30, 1998), and *von Bulow by Auersperg v. von Bulow,* 657 F.Supp. 1134 (S.D.N.Y.1987). In Nakahara, the district court for the Southern District of New York was faced with a factual scenario analogous to the one before this court. There, the actions underlying the plaintiffs' complaint arose out of business dealings which went sour. Plaintiffs eventually brought a RICO action, alleging that the defendant and his co-conspirators committed the predicate acts of wire and mail fraud in an attempt to deprive plaintiffs of their money and property. *Nakahara,* 1998 WL 35123 at *3. Specifically, plaintiffs alleged that the defendant falsely created a power of attorney and used that power of attorney to, *inter alia,* maintain lawsuits against plaintiffs, all the while knowing that the power of attorney was false for lack of authorization. *Nakahara,* 1998 WL 35123 at * 3.

In dismissing plaintiffs' claims, the court found:

> [P]laintiffs' allegations establish not the RICO predicates of mail and wire fraud, but comprise at most a potential yet still inchoate claim for malicious prosecution or abuse of process, neither of which can serve as a RICO predicate.

*Nakahara,* 1998 WL 35123 at * 6.

The *Nakahara* court relied heavily on the *von Bulow* case. In that case, the plaintiff brought suit under RICO for both malicious prosecution and fraud, yet the court found that the fraud claim was merely a recharacterization of the malicious prosecution claim, designed to circumvent the one-year statute of limitations for malicious prosecution. *von Bulow,* 657 F.Supp. at 1142. The district court found that plaintiff's complaint, " 'while denominat[ing] an action sounding in fraud,' was devoted almost entirely to allegations that the defendants had maliciously and without probable cause instituted the various criminal and civil proceedings against him." *Nakahara,* 1998 WL 35123 at * 7 (quoting *von Bulow,* 657 F.Supp. at 1137).

After determining that plaintiffs fraud claims were, in fact, claims for malicious prosecution, the *von Bulow* court found that a malicious prosecution claim may not serve as the basis for a federal RICO cause of action, as such a result would be inconsistent with the long tradition of restriction on the use of malicious prosecution so as to preserve unhindered access to the courts. *von Bulow,* 657 F.Supp. at 1143. In particular, the court noted:

> To recognize malicious prosecution as a RICO predicate would severely undermine the settled state policy of discouraging such actions. Permitting such RICO actions not only would provide malicious prosecution plaintiffs with unprecedented access to federal court, but would encourage these plaintiffs to seek the treble damages remedy authorized by the federal statute. 18 U.S.C. § 1964(b).

*von Bulow,* 657 F.Supp. at 1144.

■ This court agrees with the reasoning of the *von Bulow* and *Nakahara* courts, along with the conclusion of other district and circuit courts, that if a lawsuit is filed in bad faith, the law of torts, rather than RICO, is best designed to provide a remedy. *See, e.g., I.S. Joseph Co.,* 751 F.2d at 267–68; *Harris Custom Builders, Inc.,* 1994 WL 329962, at *4. In so finding, the court notes that it is respecting Alabama's well-settled policy of discouraging malicious prosecution actions. As the Alabama Supreme Court has stated:

> A suit for malicious prosecution is an action not favored in the law. *Boothby Realty Co. v. Haygood,* 269 Ala. 549, 114 So.2d 555 (1959). Accordingly, malicious prosecution actions face stringent limitations.

*American Surety Co. v. Pryor*, 217 Ala. 244, 115 So. 176 (1927); *see also Jordan v. Empiregas, Inc. of Belle Mina*, 337 So.2d 732 (Ala.1976). In *Boothby Realty Co.*, Justice Merrill explained this position:

"One of the reasons for this rule is that public policy requires that all persons shall resort freely to the courts for redress of wrongs and to enforce their rights, and that this may be done without the peril of a suit for damages in the event of an unfavorable judgment by jury or judge. If this were not the case, a large proportion of unsuccessful civil actions would be followed by suits for malicious prosecution, and there would be a piling of litigation on litigation without end. *Burt v. Smith*, 181 N.Y. 1, 73 N.E. 495; *Gore v. Condon*, 87 Md. 368, 39 A. 1042, 40 L.R.A. 382, 67 Am.St.Rep. 352; *Owens v. Graetzel*, 149 Md. 689, 132 A. 265."

*Boothby Realty Co. v. Haygood*, 269 Ala. 549, 554, 114 So.2d 555, 559 (1959).

*Evans v. Ala. Professional Health Consultants, Inc.*, 474 So.2d 86, 88 (Ala.1985). Accordingly, the court finds that Plaintiff's mail fraud allegations concerning Defendants' litigation activities are to be construed as claims of malicious prosecution, and as such, fail to establish the predicate acts necessary to sustain a RICO action.[4]

**B.** *Plaintiff Fails to Show Pattern of Racketeering Activity.*

Absent the litigation activities, Plaintiff only alleges two acts of wrongdoing by Defendants as the "predicate acts" to sustain a claim of racketeering activity. The court finds that these acts, even if sufficient predicate acts for RICO purposes, fail to establish a "pattern of racketeering activity" for RICO purposes. 18 U.S.C. § 1961(5). The relevant statutory section states:

"pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.

18 U.S.C. § 1961(5).

Here, the remaining predicate acts alleged by Plaintiff did not occur within the requisite time frame. In particular, the competing CON application was filed in 1983. The ambulatory surgery unit CON application was filed in 1995. These two acts range over a period of twelve years, rather than within the ten years required by the Act. 18 U.S.C. § 1961(5). Hence, the court finds that Plaintiff fails to show that Defendants engaged in a continuous pattern of racketeering activity, and Plaintiff's RICO claims must fail.[5]

---

**4.** The court notes that, notwithstanding Alabama law disfavoring malicious prosecution claims, Plaintiff has not been precluded from bringing state tort claims of malicious prosecution for the actions alleged in this action. The court expresses no opinion as to the merits of any such claim.

Furthermore, the court notes that Plaintiff's allegations may also give rise to a violation of Alabama Rule of Professional Conduct 3.1, for which Plaintiff may decide to file a Complaint with the Alabama State Bar. That Rule states, in relevant part:

In his [or her] representation of a client, a lawyer shall not file a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of the lawyer's client when the lawyer knows or when it obvious that such action would serve merely to harass or maliciously injure another.

Ala. R. Prof. Conduct 3.1(a). Again, the court expresses no opinion whatsoever on the merits of any such claim, nor does the court suggest that Plaintiff take such action. The court simply draws attention to the malicious prosecution claim and Rule 3.1 in order to demonstrate that Plaintiff was not without remedy in this matter.

**5.** The court notes that Plaintiff's Complaint may, in fact, attempt to allege additional predicate acts for purposes of sustaining Plaintiff's RICO claim. In particular, the court notes Plaintiff's allegations that Defendants attempted to hinder Plaintiff's construction of its hospital by coercing loyalty from doctors at EAMC, and by intimidating area physicians from becoming involved with Auburn. (Compl.¶¶ 62–64.) However, Plaintiff does not state what predicate act, recognized under the RICO statute, these allegations give rise to. The only predicate acts specifically cited by Plaintiff's Complaint are violations of 18 U.S.C. § 1341, the Mail Fraud statute. (Compl.¶ 7.) The court finds that none of the other possible claims of wrong-doing alleged by Plaintiff's Complaint constitute a violation of the Mail Fraud statute.

Furthermore, the court notes that Defendants have asserted numerous grounds for dismissing Plaintiff's RICO claims. Because the court finds that Plaintiff has failed to allege the requisite predicate acts necessary to sustain a cause of action under RICO, the court refrains from addressing any of these additional arguments.

## II. Section 1963 Claim

Pursuant to 42 U.S.C. § 1983, Plaintiff also brings a claim against Defendant James E. Sanders for deprivation of Plaintiff's right to Due Process of Law, in violation of the Fifth and Fourteenth Amendments to the United States Constitution.[6]

Section 1983 of Title 42 of the United States Code creates a mechanism for recovering monetary damages from and securing injunctive relief against governmental actors and entities whose action(s) under color of state or local law deprive a plaintiff of rights, privileges, or immunities secured by the United States Constitution or federal statutes. Section 1983 itself creates no substantive rights; rather, it provides a remedy for deprivation of federal rights established elsewhere. *See Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir.1989). Thus, in considering a Motion to Dismiss, the court must determine whether Plaintiff has asserted a cognizable claim under § 1983. *See Jordan v. Doe*, 38 F.3d 1559, 1564 (11th Cir.1994). Once the court has identified the specific constitutional right allegedly infringed, whether a constitutional violation has occurred can only be determined by applying the standards applicable to that particular constitutional provision. *See Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

The Fourteenth Amendment of the United States Constitution protects against deprivation by state action of a constitutionally protected interest in "life, liberty or property" without the due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). The Due Process clause provides two different kinds of constitutional protections: procedural due process and substantive due process. *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir.1994).

Here, Plaintiff claims that Defendant Sanders violated its procedural due process rights by failing to provide Plaintiff, an "affected party" under SHPDA regulations governing hospitals, with notice of applications made by competing entities for certain changes in and additions to services offered. (Compl.¶ 9.) Plaintiff contends that this failure deprived Plaintiff of an opportunity to be heard on said applications. (*Id.*) In addition, Plaintiff contends that Defendant Sanders violated Plaintiff's due process rights by ignoring his duty to investigate EAMC's construction of projects without proper notification of SHPDA. (Compl.¶ 90.) Plaintiff contends that this resulted in the deprivation of Plaintiff's due process rights, as EAMC has constructed numerous projects without Plaintiff having had the opportunity to compete for said projects at its own hospital. (Compl.¶ 90.)

Defendant Sanders asserts, and the court finds, that Plaintiff's Section 1983 claim fails because Defendant Sanders is protected by the doctrine of qualified immunity. The Supreme Court of the United States has held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

The Eleventh Circuit has articulated its standard for determining whether a defendant is entitled to qualified immunity:

> Once the qualified immunity defense is raised, plaintiffs bear the burden of showing that the federal rights allegedly violated were clearly established ... This burden is not easily discharged: "that qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their individual capacities." Plaintiffs cannot carry their burden of proving the law to be clearly established by stating constitutional rights in general terms.

*Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir.1996) (quoting *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1149 (11th Cir.1994)). "Instead, for qualified immunity to be denied,

---

**6.** Defendant Sanders is and was at all times relevant to this case, the Director of Certificate of Need Operations and Review of the State Health Planning and Development Agency. Plaintiff brings this § 1983 claim against Sanders in his individual capacity. (Compl.¶ 32.)

'preexisting law must dictate, that is, truly compel ... the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances.' (additional quotation omitted)" *Flores v. Satz,* 137 F.3d 1275, 1277 (11th Cir.1998) (quoting *McMillian v. Johnson,* 88 F.3d 1554, 1562, *amended on other grounds,* 101 F.3d 1363 (11th Cir.1996)).

Here, the court finds that Plaintiff has failed to show that Defendant Sanders violated any clearly established federal statutory or constitutional right in his alleged failure to provide Plaintiff with notice of competing CON's, and in his alleged failure to investigate or prosecute EAMC for its construction activities. In fact, Plaintiff points to no case at all in support of its allegation that Defendant Sanders violated clearly established law. Rather, Plaintiff merely states that "since Defendant Sanders was wilfully and deliberately indifferent in performing his duty which was clearly established under the law, he is not entitled to qualified immunity for his failure" to give Plaintiff notice and his failure to investigate. (Pl.'s Resp. to Defs.' Motions to Dis. at 16.)

The court construes Plaintiff's argument to put forth two assertions in opposition to Defendant's qualified immunity defense. First, Plaintiff appears to assert that Defendant Sanders is not entitled to qualified immunity, as he violated clearly established SHPDA regulations. Specifically, Plaintiff states that Alabama regulations required Defendant Sanders to provide Plaintiff—an "affected person" under the SHPDA regulations—with notice of subsequent CON applications and a briefing schedule. (Pl.'s Resp. to Defs.' Mot. to Dis. at 15 (citing SHPDA Regs. § 410–1–7–.08).) However, a state regulation is not "clearly established federal law" sufficient to withstand Defendant's defense of qualified immunity. Rather, Plaintiff must point to some clearly established federal right. *Foy,* 94 F.3d at 1532 n. 4 ("Defendants cannot be said to have violated clearly established federal law simply by failing ... to follow provisions of the Alabama code or state regulations.") (citing *Davis v. Scherer,* 468 U.S. 183, 193–95, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)). Plaintiff's general allegation that Defendant Sanders' actions deprived it of procedural due process is likewise insufficient. *Id.*

Second, Plaintiff appears to be arguing that, because Defendant Sanders was allegedly "willfully indifferent" in failing to provide notice and in failing to investigate, he thus is not entitled to qualified immunity. (Pl.'s Resp. to Defs.' Mot. to Dis. at 16.) This argument fails, as well. The Eleventh Circuit has stated:

> [W]e have "rejected the inquiry into [an official's] state of mind in favor of a wholly objective standard." *Foy,* 94 F.3d at 1532 (internal quotations and citation omitted). A party's intent and motivation are not significant in making a qualified immunity determination unless "subjective motivative or intent is a critical element of the alleged constitutional violation...." *Walker v. Schwalbe,* 112 F.3d 1127, 1132 (11th Cir.1997).

*Flores,* 137 F.3d at 1277 n. 4.

To prevail on a procedural due process claim, a plaintiff must establish: (1) a constitutionally protected interest in life, liberty or property; (2) governmental deprivation of that interest; and (3) the constitutional inadequacy of procedures accompanying the deprivation. *Bank of Jackson County v. Cherry,* 980 F.2d 1362, 1366 (11th Cir.1993). The essential elements of procedural due process are notice and an opportunity to be heard before one is deprived of a protected property interest. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542–43, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Subjective intent and motivation are not critical elements of this constitutional violation. Hence, the court finds that Defendant Sander's alleged "willful indifference" is irrelevant for purposes of determining whether he is entitled to qualified immunity.

Accordingly, the court finds that Plaintiff's Section 1983 claim against Defendant Sanders is due to be dismissed, as well.

### III. ALL WRITS ACT

The All–Writs Act provides that "[the Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their re-

spective jurisdictions and agreeable to the usages and principles of law," and further provides that "[a]n alternative writ or rule nisi may be issued by a justice or judge or a court [with] jurisdiction.]" 28 U.S.C. § 1651. This statute authorizes federal courts to issue all writs necessary and appropriate in aid of their jurisdiction, but does not, by itself, create jurisdiction in district courts. *See Brittingham v. Commissioner*, 451 F.2d 315, 317 (5th Cir.1971).[7] Therefore, because Plaintiff has failed to state a RICO or civil rights claim upon which relief can be granted, the court finds that the Plaintiff's claim brought under the All–Writs Act is due to be dismissed, as well.

### ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that Defendants' Motions to Dismiss be and the same are hereby GRANTED.

---

7. Decisions of the Former Fifth Circuit rendered prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).