Paul R. DADDONA

v.

Maxine GAUDIO, et al.

No. 399CV1251(JBA).

United States District Court,
D. Connecticut.

Sept. 8, 2000.

Paul R. Daddona, Stamford, CT, Pro se.

Maxine Gaudio, Greenwich, CT, Pro se.

Geoffrey Brandner, Stamford, CT, Pro se.

Phillip B. Swaim, New Canaan, CT, Michael T. Ryan, Ryan, Ryan, Johnson & Deluca, Stamford, CT, David J. Sheldon, U.S. Attorney's Office, New Haven, CT, for Defendants.

## RULING ON PENDING MOTIONS

ARTERTON, District Judge.

*Overview:*

In this case, *pro se* plaintiff Paul R. Daddona alleges that the defendants, Phil-

lip Swaim, Maxine Gaudio, Geoffrey Brandner, Judge Alvin W. Thompson and the United States [1] engaged in twenty-two "acts of racketeering" in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(b)–(d), and that plaintiff suffered damages, including lost interest and legal fees, as a "direct and proximate result." *See* Amended Complaint, at ¶¶ 8, 9 [Doc. # 47]. Daddona alleges that Gaudio, Swaim and Brandner violated 18 U.S.C. §§ 1962(b), (c) and (d) and that Judge Thompson violated 18 U.S.C. § 1962(d) and 42 U.S.C. § 1983. Daddona seeks damages, attorneys fees, and an order directing the parties to return certain disputed funds to the court registry (which they have already done).

This case arose, indirectly, out of Maxine and Arthur Gaudio's divorce, and the subsequent dispute over assets owned by Arthur Gaudio, including a $450,000 mortgage and note from Shelter for the Homeless, payable to Arthur Gaudio's company, Stamford Color Photo, Inc. Daddona claims to be the successor-in-interest to the assets of a company called Hudson Pak Est., which allegedly include the disputed mortgage and note. Defendant Phillip Swaim represented defendant Maxine Gaudio in the divorce and in the subsequent litigation over the assets, including *Hudson Pak Est. v. Shelter for the Homeless*, Civ. No. 5:91:cv00468 (AWT) ("the *Hudson Pak Est.* case"). Defendant Geoffrey Brandner was Arthur Gaudio's attorney in the divorce and subsequent proceedings. Defendant Judge Alvin W. Thompson is the presiding judge in the *Hudson Pak Est.* case. The disputed mortgage and note were awarded to Maxine

**1.** Plaintiff lists the United States as a defendant in his complaint, but asserts no claims against it in his complaint, and did not in-

clude it as a defendant in his RICO Case Statement. *See* Complaint, at ¶ 4.

Gaudio by Judge Thompson in the *Hudson Pak Est.* case.

In his Amended Complaint and Amended RICO Case Statement, Daddona claims that the defendants "conspired to organize a 'Enterprise' as a vehicle in which they would engage in a unlawful pattern of racketeering activity in violation of 18 USC § 1962(b)." *See* Amended Complaint, at ¶ 7a; Amended RICO Case Statement, at. ¶ 1–2. In his Amended RICO Case Statement, he identifies the alleged wrongful conduct as follows:

> defendants Maxine Swaim, Phillip Swaim, and Geoffrey Brandner filed a complaint in the Superior Court at the J/D of Stamford/Norwalk State of Connecticut in which Stamford Color Photo was named as a defendant in order to acquire and maintain control, directly or indirectly, over Stamford Color Photo's assets thru the use of the lawsuit known as CV–87, that they knew had no basis in facts that they could sustain in a court of law.

Amended RICO Case Statement, at ¶ 1–2. He further claims that the defendants

> accomplished control over Stamford Color Photo Inc. by engaging in litigation that they knew would apply relentless financial pressure on the assets of Stamford Color Photo Inc., in the form of legal fees notwithstanding the fact that the defendants knew that (1) they lacked jurisdiction over the assets of Stamford Color Photo., ... (2) The defendants refused to state a claim upon which relief could be granted and continued to file motions and documents which advocated positions in these pleadings and motions knowing that these pleadings and motions were without merit in CV–87 and in violation of U.S.C. §§ 1962(b), (c) and (d).

*Id.* at p. 2.

Daddona claims to allege 22 predicate acts to establish a civil RICO violation (due

to repetition, the actual number of alleged acts is unclear). *See* Amended Complaint, ¶¶ 7a–7p. These allegations are either conclusory assertions of conspiracy and fraud related to the *Hudson Pak Est.* case and other litigation over the note and mortgage or factual allegations describing the filing of litigation documents and allegedly biased conduct by Judge Thompson in the *Hudson Pak Est.* case. There are no factual details explaining or supporting the allegations of fraud.

In support of his conspiracy claim, Daddona simply states that the disputed funds that were interpleaded in the *Hudson Pak Est.* case were paid out from the court registry as follows: "[u]pon information and belief Phillip Swaim paid Maxine Gaudio $215,000.00, Judge Thompson received $200,000.00 and Phillip Swaim paid himself $300,000.00 and the balance of the funds were paid to Geoffrey Brandner in the amount of $34,680.000." Amended Complaint, at ¶ 11. Per order of Judge Thompson dated March 7, 2000, Swaim apparently has returned the funds to the court registry pending the outcome of this action. *See* Doc. # 55.

### Motions for Leave to File Amended Complaint and RICO Case Statement:

Daddona has filed motions for leave to file an amended complaint [Doc. # 47] and RICO Case Statement [Doc. # 48], arguing that granting leave to amend will "reduce the activity and volume of documents filed by both the plaintiff and the defendants in this instant action." Doc. # 47, at p. 1. Because Daddona's original complaint and RICO Case Statement fail to satisfy the pleading requirements for specificity in fraud pleadings under Fed.R.Civ.P. 9(b), these motions for leave to amend are granted, and the Court looks to the amended complaint and RICO Case State-

ment in deciding the defendants' motions to dismiss against Daddona.

### Motions to Dismiss:

#### The United States of America:

Although Plaintiff lists the United States as a defendant in his first complaint, he does not assert any claims against it, and does not include any allegations of wrongdoing by the United States in his RICO Case Statement. Plaintiff indicates in his Objection to Defendant Alvin W. Thompson's Motion to Dismiss that his Amended Complaint no longer asserts any claims against the United States, see Doc. # 49, at ¶ 1, but his amended complaint nevertheless, although perhaps inadvertently, continues to list the United States as a defendant, see Doc. # 47, at ¶ 4.

While it is thus unclear whether plaintiff actually has withdrawn his claims against the United States, any such claims are barred by sovereign immunity. See F.D.I.C. v. Meyer, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (absent waiver, sovereign immunity shields the United States and its agencies from suit). Here, there is no claim or indication that the United States has waived immunity. See United States v. Mitchell, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (waiver of sovereign immunity by the United States must be explicit).

"It is . . . well established that an affirmative defense of official immunity . . . may be resolved by Rule 12(b)(6) if clearly established by the allegations within the complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir.1998). To the extent that any claims remain against the United States, the United States' motion to dismiss is granted.

#### Judge Thompson:

Daddona claims that Judge Thompson violated 18 U.S.C. § 1962(d) (RICO con-

spiracy) and 42 U.S.C. § 1983. He states that Judge Thompson conspired with Swaim, Gaudio and Brandner to deprive Daddona of the note and mortgage, and that Judge Thompson received $200,000 of the interpleaded funds. In support of his § 1983 claim, he alleges the following: Judge Thompson refused to allow the Hudson Pak Est. case to go to trial, made rulings that were unsupported by the facts, engaged in ex parte communications in a related case, was biased against Daddona, refused to hold a hearing to allow Daddona to present evidence supporting his charges of abuse of process, and interfered with Daddona's attempts to file for bankruptcy on behalf of Hudson Pak (in violation of Judge Thompson's order). See Amended Complaint, at ¶¶ p1–p5(g)(2). He is suing Judge Thompson in both his official and individual capacity. See Plaintiff's Objection to Defendant Alvin W. Thompson's Motion to Dismiss the Complaint, Doc. # 49, at ¶ 2. This Court must assume the truth of these assertions for purposes of ruling on this motion to dismiss. See Citibank, N.A. v. K–H Corp., 968 F.2d 1489, 1494 (2d Cir.1992) (a case may be dismissed under Rule 12(b)(6) for failure to state a claim only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief"). Accepting all the allegations in the Amended Complaint and Amended RICO Case Statement as true, Judge Thompson's motion to dismiss Daddona's claims against him in both his official and individual capacity must be granted.

The claims against Judge Thompson in his official capacity, like the claims against the United States, are barred by sovereign immunity. "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. . . ."

*Monell v. Department of Social Services,* 436 U.S. 658, 691 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Because official capacity suits are suits against the government entity, the official defendant is entitled to raise those defenses the entity could raise. Thus, as Daddona's claims against Judge Thompson in his official capacity are to be treated as claims against the United States, they must be dismissed because of sovereign immunity.

■■■ The claims against Judge Thompson in his individual capacity are barred by judicial immunity. As the Supreme Court noted in *Butz v. Economou,*

> controversies sufficiently intense to erupt in litigation are not easily capped by a judicial decree. The loser in one forum will frequently seek another, charging the participants in the first with unconstitutional animus. Absolute immunity is thus necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation.

438 U.S. 478, 512, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (citations omitted). Judicial immunity, like other forms of absolute immunity, "is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco,* 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam). The Second Circuit has held that "since absolute immunity spares the official any scrutiny of his motives, an allegation that an act was done pursuant to a conspiracy has no greater effect than an allegation that it was done in bad faith or with malice, neither of which defeats a claim of absolute immunity." *Dorman v. Higgins,* 821 F.2d 133, 139 (2d Cir.1987); *accord Mireles,* 502 U.S. at 11, 112 S.Ct.

286 ("judicial immunity is not overcome by allegations of bad faith or malice"); *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) ("immunity applies even when the judge is accused of acting maliciously and corruptly"). Thus, Daddona's allegations of conspiracy, fraud and bribery have no effect on the inquiry as to immunity. *See Dennis v. Sparks,* 449 U.S. 24, 27, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980) (upholding the dismissal of claims against judge involving allegations "that an official act of the defendant judge was the product of a corrupt conspiracy involving bribery of the judge" on judicial immunity grounds).

■■■ Judicial immunity can only be overcome in two circumstances: First, a judge will not be found immune with respect to actions of a non-judicial nature. *See Mireles,* 502 U.S. at 11, 112 S.Ct. 286. "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* In determining whether a particular act was taken in the complete absence of all jurisdiction, "the necessary inquiry . . . is whether at the time [the judge] took the challenged action he had jurisdiction over the subject matter before him." *Stump v. Sparkman,* 435 U.S. 349, 356, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Here, there is no allegation or assertion that Judge Thompson did not have subject matter jurisdiction over the *Hudson Pak Est.* case.

In support of his RICO conspiracy allegations, Daddona alleges that Judge Thompson improperly issued unfavorable rulings in the *Hudson Pak Est.* case, and that he received $200,000 from the disbursed funds from the court registry in the *Hudson Pak Est.* case after the funds were ordered disbursed to Maxine Gaudio. Daddona also claims that two federal court reporters altered court transcripts to protect Judge Thompson, but alleges no facts

to support a connection between Judge Thompson and any such alterations. However, even assuming the truth of Daddona's allegations, as is required for purposes of deciding this motion to dismiss, *see McLaughlin v. Anderson*, 962 F.2d 187, 189 (2d Cir.1992), Judge Thompson's alleged role in the conspiracy is essentially engaging in improper conduct while serving as judge in the *Hudson Pak Est.* case. Because all these alleged actions are judicial in nature, plaintiff's claims for damages against Judge Thompson in his individual capacity must be dismissed.

### *Phillip Swaim and Geoffrey Brandner:*

Finally, Plaintiff alleges that defendants Swaim, Brandner and Gaudio violated 18 U.S.C. §§ 1962(b)–(d). Defendants Swaim and Brandner have moved to dismiss under Fed.R.Civ.P. 12(b)(6) and Fed.R.Civ.P. 9(b) [Docs. # 37, 43].[2]

Daddona claims that Swaim and Brandner "conspired to organize an 'Enterprise' as a vehicle" to engage in racketeering activity in violation of 18 U.S.C. § 1962(b). Amended Complaint, at ¶ 7a. The "pattern of racketeering" he identifies is "to engage in extensive litigation filing of false documents and affidavits which is a pattern that has infected the entire pleadings...." Amended RICO Case Statement, at ¶ 5f. He characterizes the "common plan" as the "plan to steal the funds in the Court's Registry which were being held as security for payment of a mortgage and note, the sum that was stolen is $661,000." *Id.* at ¶ 5g.

In support of their motions to dismiss, defendants argue that Daddona has failed to allege a pattern of racketeering activity or the collection of an unlawful debt, as is required to find a RICO violation, that he has not established the existence of a RICO "enterprise," and that the claim under 1962(c) must be dismissed for lack of distinctness. In addition, they assert that Daddona has failed to allege any effect on interstate or foreign commerce, that Daddona lacks standing to file this suit in his own behalf and cannot bring suit on behalf of Hudson Pak Est. because he is not an attorney, and that his current RICO claims are barred by res judicata and collateral estoppel.

The Second Circuit laid out the following requirements for pleading a civil RICO violation in *Moss v. Morgan Stanley, Inc.*:

> To state a claim for damages under RICO a plaintiff has two pleading burdens. First, he must allege that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962 (1976), commonly known as 'criminal RICO.' In doing so, he must allege the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce. 18 U.S.C. § 1962(a)–(c) (1976). Plaintiff must allege adequately defendant's violation of section 1962 before turning to the second burden—i.e., invoking

**2.** The Court notes that while defendant Maxine Gaudio filed a motion to dismiss on July 12, 1999 [Doc. # 4], that motion was denied without prejudice to renew by Order of this Court on August 20, 1999 [Doc. # 19] because Ms. Gaudio was then represented by Phillip Swaim, a named party. Ms. Gaudio entered an appearance *pro se* on September 10, 1999 [Doc. # 27], but to date has not renewed her motion to dismiss. However, Daddona's RICO claims against Ms. Gaudio suffer from the same lack of specificity in pleading that this Court identifies below with respect to Swaim and Brandner, and thus an identical analysis will be applied.

RICO's civil remedies.... To satisfy this latter burden, plaintiff must allege that he was 'injured in his business or property by reason of a violation of section 1962.'

719 F.2d 5, 17 (2d Cir.1983).

As discussed below, because Daddona's conclusory allegations in his amended complaint and RICO case statement fail to provide the specificity required in fraud pleadings and therefore do not establish that the defendants engaged in a pattern of racketeering activity, defendants Swaim and Brandner's motions to dismiss are granted.

*The section 1962(b) claims:*

The list of predicate acts that can constitute "racketeering activity" in 18 U.S.C. § 1961(1) [3] is exclusive. *See Harvey v. Harvey,* 931 F.Supp. 127, 130 (D.Conn. 1996); *Red Ball Interior Demolition Corp. v. Palmadessa,* 874 F.Supp. 576, 586 (S.D.N.Y.1995). In order to state a claim under either § 1962(b) or (c), Daddona must demonstrate either a "pattern of racketeering activity" or "collection of unlawful debt." *See* 18 U.S.C. §§ 1962(b) and (c).

Daddona's allegations that defendants Swaim, Gaudio and Brandner engaged in the "collection of an unlawful debt" by pursuing fraudulent litigation to recover the note and mortgage, *see* Complaint at 5, ¶ 7g, fall far outside the definition of unlawful debt in 18 U.S.C.

§ 1961(6). This section provides that for purposes of the RICO statute,

'unlawful debt' means a debt (A) incurred or contracted in gambling activity which was in violation of the law of the United States, a State or political subdivision thereof, or which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof, or the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate.

18 U.S.C. § 1961(6). As nothing in Daddona's complaint or RICO Case Statement provides any support whatsoever for his claim that the defendants' litigation over the note and mortgage was an "unlawful debt" as defined in this subsection, Swaim and Brandner's motions to dismiss this portion of Daddona's complaint are granted.[4]

Defendants Swaim and Brandner correctly observe that the only "pattern of racketeering" possibly alleged by Daddona's complaint is a violation of the mail and wire fraud acts, 18 U.S.C. §§ 1341 and 1343. Daddona's Amended RICO Case Statement simply states that his "RICO claims are based on wire fraud, mail fraud,' Amended RICO Case Statement, at

---

**3.** Section 1961(1) provides, in relevant part, that (1) "racketeering activity" means (A) any act or threat involving ... robbery, bribery, extortion, ..., which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: ... section 1341 (relating to mail fraud), section 1343 (relating to wire fraud)....

**4.** Because Daddona's amended complaint is not divided into separate counts, and simply asserts a violation of RICO §§ 1962(b)–(d) as a single allegation against defendants Swaim, Brandner and Gaudio, in deciding these motions to dismiss this Court has ruled on each RICO subsection independently, but cannot refer to those portions of Daddona's amended complaint by count or paragraph number.

¶ 5c, and, as discussed below, provides none of the detailed support required for this claim.

■■■ The Second Circuit has held that "allegations of predicate mail and wire fraud acts should state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993). In addition, "a complaint alleging mail and wire fraud must show (1) the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme." *S.Q.K.F.C., Inc. v. Bell Atlantic Tricon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir.1996). Finally, the plaintiff "must plead facts that give rise to a strong inference that the defendant possessed fraudulent intent." *Id.* at 634. A plaintiff may meet this last burden by "(1) alleging facts to show that defendants had both motive and opportunity to commit fraud, or (2) by alleging facts that constitute misbehavior or recklessness." *Id.* Any complaint alleging fraud, including mail and wire fraud, must also comply with Fed.R.Civ.P. 9(b), which states that "the circumstances constituting fraud or mistake shall be stated with particularity." Rule 9(b) thus requires plaintiffs pleading fraud "to specify the time, place, speaker, and sometimes even the content of the alleged misrepresentations." *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir.1986).

■■■ Daddona's only allegation of mail and wire fraud is that defendants Gaudio, Swaim and Brandner used the U.S. Mails and telephone wires in furtherance of their "scheme to maintain control over Stamford Color Photo Inc. assets ... in violation of 18 U.S.C. § 1341 and 1343, in an ongoing pattern of racketeering in Civil and Bankruptcy cases they involved them selves [sic] in within the State of Maine and the State of New York." *See* Amended Complaint at ¶ 7f. There is no explanation whatsoever as to any of the circumstances surrounding these "frauds," much less the specificity required by Rule 9(b). The remainder of his complaint lists a variety of other alleged "predicate acts," all of which involve the filing of complaints and other legal documents.[5] Assuming the truth of all his allegations for purposes of this motion to dismiss, the conclusory allegation of mail and wire fraud in Daddona's complaint is plainly inadequate and are dismissed on this ground.

In addition, this Court notes that were Daddona able to plead mail and wire fraud with the required specificity, it is doubtful whether the predicate acts alleged in Daddona's amended complaint and RICO Case Statement could constitute a "pattern of racketeering activity" as contemplated by the RICO statute.

In his Amended RICO Case Statement, Daddona characterizes the pattern of racketeering activity as follows:

---

5.  *See* Amended Complaint at ¶¶ 7a ("filed a complaint"); 7b ("engaging in litigation"); ("continued to file motion and documents which advocated positions in these pleadings and motions knowing that these pleadings and motions were without merit"); 7d ("continued to maintain in the State Courts of Connecticut that Maxine Gaudio had a valid claim ..."); 7e ("continued to file dolcuments [sic] and motions ... after the case had been dismissed"); 7h (same); 7k ("filed a proof of claim in Arthur Gaudio bankruptcy case"), "(filed a motion to intervene ... [in the *Hudson Pak Est.* case] ... [and] again committed a fraud on the court making fraudulent claims that they have a valid claim against the note and mortgage"); and L3 ("begin a blizzard of motions and false filings of Affidavits in the *Hudson Pak Est.* civil case"). Daddona also asserts that, in conjunction with the *Hudson Pak Est.* case, Judge Thompson engaged in improper conduct.

[t]he pattern of racketeering activity carried on by the defendants is to engage in extensive litigation filing of false documents and affidavits which is a pattern that has infected the entire pleadings, this pattern is intended to injure, it is wilful, the defendants have engaged in similar conduct in other litigation, the docket run is now over 64 pages in *Hudson Pak Est. v. Shelter for the Homeless* Dkt. No. 5–91–CV–00468 (AWT).

Amended RICO Case Statement, at ¶ 5f. These allegations at best amount to a vague abuse of process or malicious prosecution claim. Courts have found that allegations of malicious prosecution or abuse of process do not, on their own, suffice as predicate acts for a RICO violation. *See, e.g., von Bulow v. von Bulow,* 657 F.Supp. 1134, 1145 (S.D.N.Y.1987) ("a complaint based on nothing more than a party's filing of unjustified suits cannot fulfill the requirement that a RICO plaintiff plead a predicate act"); *Nakahara v. Bal,* No. 97 Civ.2027(DLC), 1998 WL 35123, at *8 (S.D.N.Y. Jan. 30, 1998) (same); *Auburn Medical Center, Inc. v. Andrus,* 9 F.Supp.2d 1291, 1299 (M.D.Ala.1998) (same). As the Eight Circuit noted in *dicta,*

> Judges and lawyers often complain that the courts are inundated with a flood of litigation, but the fact remains that litigation is as American as apple pie. If a suit is groundless or filed in bad faith, the law of torts may provide a remedy. Resort to a federal criminal statute is unnecessary.

*I.S. Joseph Co. v. J. Lauritzen A/S,* 751 F.2d 265, 267–68 (8th Cir.1984).

Attempts to characterize abuse of process or malicious prosecution claims as mail and wire fraud violations for RICO purposes have been scrutinized by the courts, and have been rejected where the only allegedly fraudulent conduct relates to the filing of documents in litigation. *See, e.g., Auburn Medical Center,* 9 F.Supp.2d at 1297 (finding that "engaging in [allegedly fraudulent and baseless] litigation does not constitute mail fraud for purpose of supporting a RICO claim" and that as "plaintiff's mail fraud claims are, in fact, artfully pleaded claims for malicious prosecution ... they cannot form the basis of a RICO claim"); *Nakahara,* 1998 WL 35123, at *8 (allegations of mail and wire fraud relating to the filing of fraudulent documents in litigation "constitute at most an incipient claim for malicious prosecution" and "fail as a matter of law to establish the requisite predicate acts for purposes of their asserted RICO claim").

In *Auburn Medical Center,* the plaintiff, a health care corporation, alleged that the defendants, a competing hospital, its directors and a state health board official, had conspired to prevent the construction of plaintiff's hospital by filing fraudulent applications to the health board and by interfering in a lawsuit filed by the plaintiff against the state health board by attempting "to intervene and file post-judgment motions subsequent to a ruling by [the] court ... and then file new litigation and subsequent appeals," 9 F.Supp.2d at 1297. The complaint also alleged that defendants acted with knowledge that their appeals were groundless. *See id.* at 1298. Under these circumstances, the court found that "despite plaintiff's efforts to couch its claims concerning Defendants' litigation activities in terms of fraud, plaintiff, in essence, is stating a claim for malicious prosecution." *Id.* at 1297.

Similarly, in *Nakahara,* the plaintiffs claimed that the defendants conspired in a scheme to deprive them of their money and property by knowingly making perjurious statements and representations, and wrongfully engaged in the "filing of, or

participation, in the various legal actions pending against them." 1998 WL 35123, at *3, *8. Despite the plaintiffs' efforts to draft their complaint as alleging mail and wire fraud violations, the court found that the numerous references to "fraud" and "fraudulent" did not change the basic fact that "the gravamen of their complaint" related to malicious prosecution. *Id.* at *8. Because "the Complaint's only detailed pleadings allege incidents of vexatious and harassing litigation" the court concluded that the plaintiffs had "at most plead[ ] an inchoate claim for malicious prosecution and at bottom fail[ ] adequately to allege the predicate acts of mail and wire fraud that are posited as the basis for their RICO action." *Id.* at *9, *11.

Those cases that have found that alleged mail and wire fraud violations arising out of malicious prosecution or abuse of process could be RICO predicate acts involved additional allegations of extortion or some other pattern of racketeering activity. *See United States v. Eisen*, 974 F.2d 246, 251–54 (2d Cir.1992) (mail and wire fraud violations arising out of scheme by law firm to deprive civil defendants and their liability insurers of money through the filing of fraudulent lawsuits, bribery and intimidation of witnesses and the creation of false photographs, documents and physical evidence of accidents for use before and during trial could be RICO predicate act); *Lemelson v. Wang Laboratories Inc.*, 874 F.Supp. 430, 434 (D.Mass.1994) (mail and wire fraud violations in case claiming extortion of millions of dollars through a pattern of litigation and subsequent settlement over fraudulently obtained patents were RICO predicate act); *see also Hall American Center Assoc. L.P. v. Dick*, 726 F.Supp. 1083, 1097 (E.D.Mich.1989) (finding that plaintiff's allegations that defendants engaged in filing lawsuits and notices of lis pendens as one part of a larger extortionate scheme to obtain plaintiff's property by encumbering it with liens that made it impossible for plaintiff to sell the property to anyone other than defendant were sufficient to state a cause of action under the Hobbs Act, and thus could be considered a RICO predicate act).

In *Eisen*, the Second Circuit noted that "there is some tension between the congressional decision to include federal mail fraud as a predicate offense and to exclude perjury, whether in violation of federal or state law." 974 F.2d at 254. However, the court concluded, where

a fraudulent scheme falls within the scope of the federal mail fraud statute and the other elements of RICO are established, use of the mail fraud offense as a RICO predicate act cannot be suspended simply because perjury is part of the means for perpetrating the fraud. We do not doubt that where a series of related state court perjuries occurs, it will often be possible to allege and prove both a scheme to defraud within the meaning of the mail fraud statute as well as the elements of a RICO violation. But in such cases, *it will not be the fact of the perjuries alone that suffices to bring the matter within the scope of RICO.*

*Id.* (emphasis added).

In *Nakahara*, the court distinguished *Eisen* on the grounds that

[t]he fraudulent criminal scheme underlying the predicate mail fraud offenses in *Eisen* was entirely external to, and independent of, any of the particular disputes between the litigants in the civil actions that were improperly filed and litigated by the *Eisen* defendants in execution of their scheme. In contrast, the RICO claim in this case—like the claim in *von Bulow* —seeks to have this Court in effect decide the merits of lawsuits or proceedings that are already pending between these same parties in several

other jurisdictions, and which are at heart based on long-standing disputes between the parties that predate this litigation.

*Id.* at *9.

Here, as in *Nakahara,* Daddona asserts no claims of extortion or any other racketeering activity apart from mail and wire fraud. Unlike *Eisen,* there is no claim here that the underlying litigation over the note and mortgage is part of any larger scheme to deprive Daddona of his property. As noted above, Daddona's sole allegation of mail and wire fraud is that defendants Gaudio, Swaim and Brandner used the U.S. Mails and telephone wires in furtherance of their "scheme to maintain control over Stamford Color Photo Inc. assets ... in violation of 18 U.S.C. § 1341 and 1343, in an ongoing pattern of racketeering in Civil and Bankruptcy cases they involved them selves [sic] in within the State of Maine and the State of New York." *See* Complaint p. 5, at ¶ 7f. From his reference to civil and bankruptcy cases in Maine and New York, it appears that Daddona is complaining about Swaim and Brandner's participation as attorneys in the Gaudio divorce and Arthur Gaudio's subsequent bankruptcy, although there is no explanation as to how this constitutes a scheme to defraud Daddona.[6] As the court concluded in *Nakahara,* Daddona seems simply to be asking this Court to allow him to re-litigate the *Hudson Pak Est.* case and to provide him with a new forum to air his on-going dispute with Swaim, Gaudio and Brandner. As in *Nakahara,* it appears that these allegations, even if properly supported by the requisite factual detail, simply fail to establish a pattern of racketeering activity, as defined by § 1961. However, because this Court has

granted the motion to dismiss on the grounds of insufficiency of the mail and wire fraud pleadings, it need not decide this issue at this time.

*Section 1962(c) claim:*

█ Although the activity sought to be alleged may not, as a matter of law, constitute a pattern of racketeering activity, which would dispose of both the § 1962(b) and § 1962(c) claims, Daddona's § 1962(c) claim suffers from an additional, fatal deficiency, which would require dismissal regardless of whether mail and wire fraud in the context of allegations of malicious prosecution can establish a "pattern of racketeering activity" for RICO purposes. Section 1962(c) prohibits "any person employed by or associated with any enterprise ... to conduct ... such enterprise's affairs through a pattern of racketeering activity." Daddona alleges violation of this section by defendants Swaim, Gaudio and Brandner. Swaim and Brandner have moved to dismiss this claim on the grounds that Daddona has not pled that the "person" and the "enterprise" are distinct. Indeed, Daddona's Amended RICO Case Statement unambiguously states that "[t]he defendants are the Enterprise itself," Amended RICO Case Statement at ¶ 13b.

Because the prohibited activity in § 1962(c) is conducting the affairs of an enterprise through a pattern of racketeering activity, the Second Circuit has held that the person charged with violating § 1962(c) and the enterprise she or he allegedly "conducted" cannot be the same entity. *See Bennett v. United States Trust Co.,* 770 F.2d 308, 315 (2d Cir.1985) (section 1962(c) "clearly envisions" that the "person" and the "enterprise" will be dis-

---

**6.** Arthur Gaudio's bankruptcy petition was filed in Maine, and Maxine Gaudio filed a proof of claim in the bankruptcy case. *See*

Doc. # 31, at ¶ 5.8 It is unclear what proceedings, if any, occurred in New York.

tinct); *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1062 (2d Cir.1996) (citing cases), *vacated on other grounds*, 525 U.S. 128, 119 S.Ct. 493, 142 L.Ed.2d 510 (1998). Thus Swaim and Brandner's motions to dismiss must be granted as to the portion of Daddona's complaint asserting a violation of § 1962(c) on this alternative ground.

### Section 1962(d) RICO Conspiracy:

Section 1962(d) states that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." "Any claim under § 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir.1993). Therefore, because this Court finds that the pleading of Daddona's §§ 1962(b) and 1962(c) claims is deficient, Swaim and Brandner's motions to dismiss the portion of Daddona's complaint stating a § 1962(d) conspiracy claim are granted as well.

Because the Court has ruled in favor of defendants Swaim and Brandner on the substantive RICO issue and the RICO conspiracy issue, it need not reach their additional arguments of lack of standing, res judicata and collateral estoppel.

Despite doubts about whether the activity alleged by Mr. Daddona can constitute a pattern of racketeering for RICO purposes, this Court notes that Daddona is a *pro se* litigant, and he has not yet been granted an opportunity to replead with the benefit of guidance from this Court. *Cf. Mooney v. Vitolo*, 435 F.2d 838, 839 (2d Cir.1970) (affirming dismissal without right to replead where plaintiff had been given an opportunity to replead twice and had the benefit of extensive discovery). Generally, repleading is permitted where fraud claims are dismissed for lack of specificity

pursuant to Fed.R.Civ.P. 9(b). *See Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir.1986) ("Complaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend."); *see also Official Publications, Inc. v. Kable News Co.*, 884 F.2d 664, 669 (2d Cir.1989) (reversing district court's denial of leave to replead). Daddona is granted leave to replead to set forth the factual basis for his mail and wire fraud allegations that this Court has found lacking in his current amended complaint, if indeed such factual basis can in good faith be pled.

### Conclusion:

Mr. Daddona's motions for leave to amend his complaint [Doc. # 47] and RICO case statement [Doc. # 48] are GRANTED. The motion to dismiss filed by the United States and Judge Thompson [Doc. # 39] is GRANTED. The motions to dismiss filed by Swaim and Brandner [Docs. # 37 and 43] are GRANTED, and accordingly the amended complaint is dismissed. Any repleaded complaint must be filed no later than September 29, 2000, and may assert claims only against Swaim, Brandner and Gaudio, and not the United States or Judge Thompson. Plaintiff is advised that failure to timely file a Motion to Reopen with a repleaded complaint which complies with this ruling will bar any further proceedings against Swaim, Brandner and Gaudio in this action.

The Clerk is directed to close this case.

### *Motion for Sanctions [Doc. # 33]:*

Daddona filed his complaint on July 2, 1999, and his RICO Case Statement on September 21, 1999. According to the Court's Scheduling Order [Doc. # 32], he was required to file his RICO Case Statement on September 20, 1999. Defendant Swaim moved for sanctions under Fed.R.Civ.P. 16(f) on September 28, 1999 [Doc. # 33]. In response, Daddona submit-

ted an affidavit explaining that a traffic accident on I–95 on September 20, 1999 kept him from reaching the Clerk's Office until after 5 p.m., and he express mailed his Case Statement that night [Doc. # 34].

Rule 16(f) provides that

[i]f a party or party's attorney fails to obey a scheduling or pretrial order . . . the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just. . . . In lieu of or in addition to other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance with substantially justified or that other circumstances make an award of expenses unjust.

F.R.C.P. 16(f). This Court finds credible Mr. Daddona's affidavit explaining the reason for his delay, and concludes that his noncompliance with this Court's scheduling order was therefore substantially justified and the imposition of sanctions under these circumstances would be unjust.

Swaim's motion for sanctions under Rule 16(f) [Doc. # 33] is DENIED.

### Motion for Rule 11 Sanctions Against Daddona [Doc. # 35]:

Maxine Gaudio moved for Rule 11 sanctions against Daddona under Rules 11(b)(1), 11(b)2 and 11(b)(3) on September 10, 1999, claiming that Daddona had initiated this lawsuit to harass the defendants, intimidate Judge Thompson into recusing himself from the *Hudson Pak Est.* case, cause unnecessary delay and needlessly increase the cost of litigation for plaintiffs. She claims that the factual allegations in Daddona's complaint have no evidentiary support.

Rule 11 sanctions

shall be imposed against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact or a good faith argument for the extension, modification or reversal or existing law. *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985). Moreover, the Second Circuit has admonished, "[c]ourts must strive to avoid the wisdom of hindsight in determining whether a pleading was valid when signed, and any and all doubts must be resolved in favor of the signer." *Id.*

Because this Court has granted Mr. Daddona leave to amend his complaint to flesh out his factual allegations of mail and wire fraud as a "pattern of racketeering activity," whether Daddona's pleading is "well-grounded" cannot yet be determined.

Ms. Gaudio's motion for Rule 11 sanctions [Doc. # 35] is therefore DENIED, without prejudice to renew. The Court notes that if Mr. Daddona chooses to file a repleaded complaint it must comport with this Court's ruling on the requirements for specificity in pleading mail and wire fraud. An amended complaint containing merely "perfunctory or cosmetic changes . . . may well be regarded by the Court as a frivolous filing in violation of Fed.R.Civ.P. 11." *Economic Opportunity Commission v. County of Nassau,* 47 F.Supp.2d 353, 371 (E.D.N.Y.1999) (quotations and citations omitted).

### Plaintiff's Request for Status Conference [Doc. # 56]:

Daddona filed a request for status conference on May 8, 2000.

In light of this Court's ruling dismissing Daddona's claims against Judge Thompson, the United States, Brandner and

Swaim, Daddona's request for a status conference [Doc. # 56] is DENIED.

IT IS SO ORDERED.