INTERSTATE FLAGGING, INC., Plaintiff,

v.

TOWN OF DARIEN, Town of Greenwich,[1] City of Norwalk, City of Stamford, James Byington, President of AFSCME Local # 1727, in his official capacity, Michael Pacewicz, President of Silver Shield Association, in his official capacity, Karl Murphy, President of IBPO Local # 585, in his official capacity, and Joe Kennedy, President of the Stamford Police Association, in his official capacity, Defendants.

No. 3:02CV01207 (AWT).

United States District Court,
D. Connecticut.

Aug. 20, 2003.

additional factual hearing is necessary.

1. Although the Complaint refers to Greenwich as a city, it is in fact a town.

James S. Brewer, Erin I. O'Neil–Baker, Brewer & O'Neil, Raun M. Marlin, West Hartford, CT, for plaintiff.

Frank J. Szilagyi, Josephine A. Spinella, Silvester, Daly & Delaney, Hartford, CT, Raymond J. Kelly, James P. Mooney, Kelly & Mooney, Fairfield, CT, Scott M. Harrington, Jonathan P. Whitcomb, Diserio, Martin, O'Connor & Castiglioni, Peter M. Nolin, Jay H. Sandak, Kevin M. Greco, Sandak Hennessey & Greco, James V. Minor, Office of Legal Affairs, Stamford, CT, M. Jeffry Spahr, Corporation Counsel's Office, Norwalk, CT, for defendants.

### RULING ON MOTIONS TO DISMISS

THOMPSON, District Judge.

Plaintiff Interstate Flagging, Inc. ("Interstate Flagging") brings this action

against two groups of defendants—the towns or cities of Darien, Norwalk, Greenwich, and Stamford (the "Municipal Defendants") and the president of the police union of each of the Municipal Defendants (the "Union Presidents"). The plaintiff brings federal claims against the defendants, pursuant to 42 U.S.C. § 1983, for violation of 18 U.S.C. § 1962, which is part of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Counts One, Three, Five, Seven, and Nine), and also brings state law claims against the Municipal Defendants for tortious interference with contractual relations (Counts Two, Four, Six, and Eight). The defendants have moved to dismiss the RICO claims pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Also, they argue that, in the absence of a federal claim, the court should decline to exercise supplemental jurisdiction over the state law claims for tortious interference with contractual relations. Finally, some of the defendants argue that the state law claims should also be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

For the reasons set forth below, the defendants' motions to dismiss the RICO claims are being granted pursuant to Fed. R.Civ.P. 12(b)(6), and the court declines to exercise supplemental jurisdiction over the state law claims. Thus, the court does not reach the issue of whether the plaintiff has failed to state a claim upon which relief can be granted with respect to its claims for tortious interference with contractual relations.

## I. BACKGROUND

Interstate Flagging is incorporated in the State of Connecticut and engaged in the business of providing traffic control services by certified flaggers for construction and utility maintenance contractors. The plaintiff's employees are certified traffic controllers.

Interstate Flagging claims that the defendants violated 18 U.S.C. § 1962(d) because their actions constituted "racketeering activities" under 18 U.S.C. § 1951(a). Under 18 U.S.C.A. § 1962(d)(West 2000), "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of [Section 1962]." The plaintiff does not specify in its Second Amended Complaint which of subsections (a), (b), and/or (c) the defendants allegedly violated. However, in the RICO Case Statement, the plaintiff states "Not applicable" in response to question 11, which asks for information regarding violation of Section 1962(a). Thus, only subsections (b) and (c) appear to be at issue in this case. Those subsections read as follows:

> (b) It shall be unlawful for any person through a pattern of *racketeering activity* . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of *racketeering activity* . . . .

18 U.S.C.A. § 1962 (West 2000) (emphasis added). The term "racketeering activity" is defined as "any act which is indictable under any of the following provisions of title 18, United States Code: . . . section 1951 (relating to interference with commerce, robbery, or extortion) . . . ." 18 U.S.C.A. § 1961(1) (West Supp.2003). In this case, the plaintiff alleges that the pertinent "racketeering activities" are ones

described in 18 U.S.C.A. § 1951(a) (West 2000), which provides that:

> [w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by ... *extortion* or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

(emphasis added).

The plaintiff's RICO claims against the Municipal Defendants are substantially similar. Interstate Flagging alleges that each of the Municipal Defendants violated 18 U.S.C. § 1962(d) because it has either an ordinance, a policy, a regulation, or a custom of requiring that police officers have the right of first refusal and/or the exclusive right to provide traffic control services for construction and/or utility maintenance contractors, either within the general township or in specified areas. Interstate Flagging alleges that, in addition, police officers of that Municipal Defendant harassed and threatened the plaintiff's flaggers at work sites and forced them off the sites—an alleged act of extortion that affected interstate commerce. This activity, according to Interstate Flagging, has led companies to cancel their contracts with Interstate Flagging, has prevented the plaintiff from engaging in its business within the municipalities' defined areas, has caused the plaintiff to suffer a substantial loss of profits, and has placed the plaintiff in danger of closing its operations altogether.

The Union Presidents, i.e. James Byington, Karl Murphy, Joe Kennedy, and Michael Pacewicz, are being sued in their official capacities.[2] Interstate Flagging alleges that the Union Presidents have enforced the alleged violative ordinances, policies, regulations, and/or customs regarding the police officers' exclusive rights and/or rights of first refusal to provide traffic control services through the use of extortion and physical threats that affected commerce in violation of 18 U.S.C. 1962(d).

## II. STANDARD OF REVIEW

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The RICO case statement is deemed to be part of the complaint for purposes of a 12(b)(6) motion to dismiss. *Goldfine v. Sichenzia,* 118 F.Supp.2d 392, 396 (S.D.N.Y.2000). A complaint should not be dismissed under Rule 12(b) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *See also Jaghory v. New York State Dept. of Educ.,* 131 F.3d 326, 329 (2d Cir.1997); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

"The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Mytych v. May Dept. Stores Co.,* 34 F.Supp.2d 130, 131 (D.Conn.1999)

---

**2.** Although the Second Amended Complaint names the Union Presidents in both their individual and official capacities, the plaintiff subsequently filed a motion for voluntary dismissal of the claims against the Union Presidents in their individual capacities. *See* Doc. # 139.

(quoting *Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984)). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." *United States v. Yale New Haven Hosp.,* 727 F.Supp. 784, 786 (D.Conn.1990) (citing *Scheuer,* 416 U.S. at 232, 94 S.Ct. 1683).

## III. *DISCUSSION*

### A. *RICO Claims*

 To succeed on a claim under RICO, the plaintiff must first adequately allege a violation of 18 U.S.C. § 1962. To do so, the plaintiff "must allege the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 17 (2d Cir.1983). Second, to invoke RICO's civil remedies under 18 U.S.C. § 1964, the plaintiff must allege that it was "injured in [its] business or property *by reason of* a violation of *section 1962.*" *Id.*

### 1. *Counts One, Three, Five, and Seven—RICO Claims Against the Municipal Defendants*

Section 1962 is aimed at "any person" who engages in racketeering activity which affects interstate or foreign commerce. The Municipal Defendants do not dispute that, as municipalities, they are "persons" within the meaning of RICO.[3] *See Nu–Life Construction Corp. v. Board of Education of the City of New York,* 779 F.Supp. 248,

251 (E.D.N.Y.1991). "However, a finding that a municipal entity is a 'person' within the meaning of 18 U.S.C. § 1961(3) is only the first hurdle on the track leading to municipal liability under RICO." *Id.* (internal quotations omitted). The plaintiff must then establish that the defendant committed two or more predicate acts constituting a pattern of racketeering activity.

 Section 1961(1) provides an exclusive list of the predicate acts that can constitute a pattern of racketeering activity. *Daddona v. Gaudio,* 156 F.Supp.2d 153, 160 (D.Conn.2000). The plaintiff must demonstrate, with respect to a defendant, both that the defendant committed a predicate offense as delineated in Section 1961 and that the defendant had the requisite scienter for the underlying predicate offense. *O & K Trojan, Inc. v. Municipal & Contractors Equipment Corp.,* 751 F.Supp. 431, 434 (S.D.N.Y.1990). However, "a municipal corporation[ ] is incapable of having the criminal intent to support RICO's predicate offense requirement." *Id. See also Nu–Life Construction Corp.,* 779 F.Supp. at 251 (A municipality is "incapable of forming the criminal intent necessary to support the alleged predicate offenses."); *Frooks v. Town of Cortlandt,* 997 F.Supp. 438, 457 (S.D.N.Y.1998) ("[E]very court in this Circuit that has considered the issue has held that a municipality cannot form the requisite criminal intent to establish a predicate act, and has therefore dismissed the claim against the municipality."); *Wee v. Rome Hospital,* No. 93–CV–894, 1996 WL 191970, at *5 (N.D.N.Y. April 15, 1996) ("Municipalities and their agents are not subject to civil RICO claims because government entities are incapable of forming malicious intent."). "Moreover, *mens rea* on the part of the agents of the municipality may not

---

**3.** The term "person" is defined under RICO to "include[ ] any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C.A. § 1961(3).

be imputed to the municipality through the doctrine of respondeat superior." *Rini v. Zwirn,* 886 F.Supp. 270, 295 (E.D.N.Y. 1995). Thus, the Municipal Defendants cannot be held liable under Section 1962(b) because the Municipal Defendants cannot have the requisite criminal intent. In addition, no such intent can be imputed to the Municipal Defendants by virtue of their respective police officers' intent.

■ Interstate Flagging is likewise unable to prevail against the Municipal Defendants pursuant to Section 1962(c). Section 1962(c) prohibits any person *employed by or associated with* any enterprise engaged in interstate commerce from participating in the conduct of such enterprise's affairs through a pattern of racketeering. In Counts One, Three, Five, and Seven, however, only the Municipal Defendants are named as defendants. No persons employed by or associated with the enterprise, i.e. the Municipal Defendants, have been named as defendants in these counts. "Under [Section 1962(c)], the RICO 'person' must conduct the affairs of the RICO 'enterprise' through a pattern of racketeering activity. We have determined that the person and the enterprise referred to must be distinct. . . . [T]he plain language of [S]ection 1962(c) clearly envisions separate entities, and the distinctness requirement comports with legislative intent and policy." *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,* 30 F.3d 339, 344 (2d Cir.1994) (citations omitted). Here, the plaintiff has not met the distinctness requirement of the statute.

The plaintiff's Section 1961(d) conspiracy claims fail because Interstate Flagging's claims of violations of Sections 1961(b) and (c) are legally insufficient. *Daddona,* 156 F.Supp.2d at 165 ("Any claim under *§ 1962(d)* based on conspiracy to violate the other subsections of *section 1962* necessarily must fail if the sub-stantive claims are themselves deficient.") Accordingly, Counts One, Three, Five, and Seven fail to state a claim upon which relief can be granted, and are being dismissed.

### 2. *Count Nine—RICO Claims Against the Union Presidents in their Official Capacities*

■ Interstate Flagging has failed to allege facts sufficient to demonstrate that the Union Presidents committed predicate acts that would constitute a pattern of "racketeering activity"—namely, extortion. Consequently, Count Nine is legally insufficient.

In the RICO Case Statement, Interstate Flagging states the following as the alleged misconduct and basis of liability for each of the Union Presidents:

[The Union President] enforced and encouraged policy(ies), regulation(s), ordinance(s), or custom requiring that police officers have either the exclusive right, or the right of first refusal to provide traffic control services for construction and/or utility maintenance contractors, either within the general township, or in specified areas, through the use of *extortion* and physical threats that affected commerce in violation of 18 U.S.C. Section 1951(a) and 18 U.S.C. Section 1962(d).

(RICO Case Statement at ¶¶ 2) (E), (F), (G), and (H) (emphasis added). Moreover, in describing the predicate acts which constituted the pattern of "racketeering activity" in the RICO Case Statement, Interstate Flagging does not mention the Union Presidents in its descriptions of the alleged predicate acts nor in its description of the participants in the predicate acts. (RICO Case Statement at ¶¶ 5) (A) and (B). The predicate acts alleged are as follows:

The defendant Towns, through their encouragement and inaction against the

police officers of the towns, are liable for the predicate acts that violated 18 U.S.C. [§ ]1951(a), the Hobbs Act, in that the police officers [sic] actions in harassing and threatening the plaintiff's employees and the construction crews, was *an act of extortion* that affected interstate commerce.

(RICO Case Statement at ¶ 5) (A) (emphasis added). In its memorandum in opposition to the defendants' motions to dismiss, Interstate Flagging further states that "[t]he plaintiff sufficiently alleges that the Union defendants affected interstate commerce by *extortion* or violence to person or property." (Pl.'s Mem. Opp'n Motions to Dismiss at p. 13) (emphasis added).

Extortion is defined under 18 U.S.C.A. § 1951(b)(2) as "the *obtaining* of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." (emphasis added). Here, Interstate Flagging has not alleged that any of the Union Presidents obtained property from the plaintiff as a result of the alleged wrongful actions of the police officers of that municipality. The Supreme Court recently addressed the requirement that property be "obtained" in *Scheidler v. National Organization for Women*, 537 U.S. 393, 123 S.Ct. 1057, 154 L.Ed.2d 991 (2003), where the Court concluded that several anti-abortion groups had not committed extortion in violation of the Hobbs Act and RICO even though they had admittedly engaged in unlawful activities that caused various abortion clinics to suffer loss of business. The Court explained:

[W]e have construed the extortion provision of [18 U.S.C. § 1951] to require not only the deprivation but also the acquisition of property....

There is no dispute in these cases that petitioners interfered with, disrupted, and in some instances completely deprived respondents of their ability to exercise their property rights. Likewise, petitioners' counsel readily acknowledged at oral argument that aspects of his clients' conduct were criminal. But even when their acts of interference and disruption achieved their ultimate goal of "shutting down" a clinic that performed abortions, such acts did not constitute extortion because petitioners did not "obtain" respondents' property.... Petitioners neither pursued nor received "something of value from" respondents that they could exercise, transfer, or sell. To conclude that such actions constituted extortion would effectively discard the statutory requirement that property must be obtained from another, replacing it instead with the notion that merely interfering with or depriving someone of property is sufficient to constitute extortion.

Eliminating the requirement that property must be obtained to constitute extortion would not only conflict with the express requirement of the Hobbs Act, it would also eliminate the recognized distinction between extortion and the separate crime of coercion—a distinction that is implicated in these cases.

The crime of coercion, which more accurately describes the nature of petitioners' actions, involves the use of force or threat of force to restrict another's freedom of action.

*Id.* at 1065–1066 (footnote omitted) (citation omitted).

Given that Count Nine fails to allege that the Union Presidents acquired property from the plaintiff, the plaintiff has failed to state a claim under RICO because it has not alleged the commission of predicate acts constituting a "racketeering activity," and Count Nine is being dismissed.

### B. *State Law Claims—Tortious Interference*

 The plaintiff's remaining claims are state law claims for tortious interference with contractual relations. Under 28 U.S.C.A. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a [state law] claim ... if ... the district court has dismissed all claims over which it has original jurisdiction." "[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

 While dismissal of the state law claims is not mandatory, *Rosado v. Wyman*, 397 U.S. 397, 403–05, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), when "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon*, 484 U.S. at 350 n. 7, 108 S.Ct. 614. *See also DiLaura v. Power Authority of New York*, 982 F.2d 73, 80 (2d Cir.1992); *Baylis v. Marriott Corp.*, 843 F.2d 658, 664–65 (2d Cir.1988); *Indep. Bankers Ass'n v. Marine Midland Bank*, 757 F.2d 453, 464 (2d Cir.1985).

Because the court is granting the motion to dismiss the plaintiff's RICO claims and those are the only claims over which the court has original jurisdiction, the court declines to exercise supplemental jurisdiction over the plaintiff's state law claims.

## IV. *CONCLUSION*

For the reasons set forth above, the defendants' motions to dismiss (Docs. # 126, 129, 131, 133, 135, and 137) are hereby GRANTED. The Clerk shall close this case.

It is so ordered.